IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| WINSTON HAMILTON, | § | |
| *Plaintiff*, | § | CIVIL ACTION NO.: |
| | § | |
| v. | § | |
| | § | |
| DUKE ENERGY CORPORATION | § | JURY DEMANDED |
| *Defendant*. | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

**TO THE HONORABLE U.S. DISTRICT COURT JUDGE:**

NOW COMES Plaintiff Winston Hamilton (hereinafter referred to as "Plaintiff") in the above-referenced matter, complaining of and about Defendant Duke Energy Corporation (hereinafter referred to as "Defendant"), and for causes of action files this Plaintiff's Original Complaint, showing to the Court the following:

### I.  PARTIES

1. Plaintiff is an individual residing in Harris County, Texas. Plaintiff is a citizen of the United States and the State of Texas.

2. Defendant is a foreign corporation organized and existing under the laws of the State of Texas and having offices and its principal place of business at 5555 San Felipe St, Houston, TX 77056. Defendant can be served by and through its registered agent, CT Corporation System, at 1999 Bryan St., Ste. 900 Dallas, TX 75201-3136.

## II. JURISDICTION AND VENUE

3. This Court has jurisdiction pursuant to 28 U.S.C. § 1331, as Plaintiff's causes of action arise under federal statutes: 42 U.S.C. 1981 (hereinafter referred to as "Section 1981"). The unlawful employment practices were committed within the jurisdiction of this Court.

4. Venue is proper in the Southern District of Texas - Houston Division pursuant to 28 U.S.C. § 1391(a) because this is the judicial district where the Defendant's principal place of business exists.

## III. NATURE OF THE ACTION

5. Plaintiff files this action against Defendant for its race discrimination and retaliation under 42 U.S.C. 1981.

## IV. EXHAUSTION OF ADMINISTRATIVE REMEDIES

6. No administrative exhaustion or other conditions precedents are required prior to the filing of claims under 42 U.S.C. 1981.

## V. FACTS

7. Plaintiff was hired by Defendant in January 2005, and quickly earned the title of Engineer III, during the first quarter of 2010. Despite consistently strong performance reviews, and assurances from his direct supervisors and departmental managers, Plaintiff would not receive another promotion until the year 2018. This was due to retaliation for making complaints based on race. The result was that Plaintiff was not compensated equally to his peers for this period.

8. In 2012, Plaintiff challenged his performance evaluation for the 2011 year, through HR, because the evaluation originally contained many errors. Highlights of errors included in the original evaluation were work products that did not belong to plaintiff, and negative

remarks attributed for the successful completion of an elective Systems Operations training course (Plaintiff did not score at the top of his class was the remark on the original evaluation). The 2011 Performance Evaluation was revised, and scored higher by the Reactor Systems Director at that time Eddie Anderson. Mr. Anderson also told Plaintiff that if he maintained performance, he would be promoted to Lead Engineer in 2013, which was the first available opportunity based on Plaintiff's performance history.

9. Plaintiff requested interviews with Human Resources, in which Plaintiff stated on several occasions that the evaluation was driven by limiting Plaintiff's promotional opportunity based on his race.

10. Plaintiff's belief was based on both perception and direct comment. First, the opportunity for black engineers to enter Site Operations as Senior Reactor Operators (SROs) at Oconee nuclear station was slim. Plaintiff had not seen a black SRO recruited from engineering in the time Plaintiff was at the plant, January 2005 through March 2014. Plaintiff's previous counterpart, a white male, in the same role and duties, was taken for this position.

11. Moreover, direct comments were made during Plaintiff's tenure, such as, "**you will never be senior leadership** at Oconee", and "I know **what a manager looks like,**" from coworkers and management personnel, as well as intimidation tactics from Senior Management, which include but are not limited to ignoring Plaintiff.

12. In 2012, multiple statements were made to Plaintiff's Supervisor at Oconee Nuclear Station regarding Plaintiff's perceived treatment from management and specific co-workers.

13. An incident occurred during a refueling activity in which Plaintiff was not allowed to leave the containment building for a period of 5 hours. When Plaintiff asked for relief (bathroom), he was yelled at and spoken rudely to. Other personnel, supporting the same

activity in the same location, had rotations of three hours. When Plaintiff finally returned, he was persuaded by Mr. Anderson to not file a complaint, and expensed a dinner for Plaintiff and his spouse as retribution. Plaintiff still has expense report for that "Management Sponsored" meal.

14. In December 2012, Plaintiff addressed his race-based discrimination concerns with the Oconee Site Vice President Preston Gillespie in a face-to-face meeting. A similar meeting occurred in December 2013 with Oconee Site Vice President Scott Batson.

15. Despite being told for several years that Plaintiff was on track for promotion, and both supervisor and co-workers of Plaintiff providing a written document for the business need to promote Plaintiff in December 2013 [addressed to Senior management], Plaintiff was never promoted beyond Engineer III at Oconee Nuclear Station.

16. In March of 2014, feeling that opportunities would be limited going forward at Oconee Nuclear Station, Plaintiff applied and was accepted to a lateral internal position as a Contract Manager supporting Major Projects Sourcing Supply Chain. However, it should be made clear that when Plaintiff hired for this position, the hiring manager, Burt Durstock stated that his expectation for this role was someone that filled a higher band on the hierarchy, and Plaintiff should be immediately promoted as the opportunity became available. He went on to further say "I [Plaintiff] should call him" if there were any issues around the promotion.

17. Shortly following the transition, Plaintiff made what he thought was an anonymous comment in the 2014 Employee Engagement Survey which would close sometime around the end of June, 2014. Plaintiff suggested that black people were treated poorly in certain areas of the Nuclear department, and that they shouldn't hire black people into those areas.

The "anonymous" comments would be spread and follow Plaintiff, as non-supervisory personnel would make repeated reference to the Employee Engagement Survey comments to Plaintiff directly all the way to his departure in 2018.

18. In April 2016, a position was created at a higher band for Contract Manager, yet Plaintiff was not evaluated for the position. When asked about what Burt Durstock said to Plaintiff and his qualifications for the position to Plaintiff's functional Director at the time, Mark Teague, it became clear that Plaintiff was not evaluated for the position against the criteria set via e-mail communication dated August, 2016. A white male, with no previous experience in the role for Major Projects, was given the title. Plaintiff had served in the lead position for nearly two years at the time.

19. In an effort to quell comments being made by individuals on the Lee Combine Cycle Project, Plaintiff addressed his concerns directly with Todd Shuping, acting Project Director in a one-on-one meeting September, 2016. The comments persisted.

20. Plaintiff continued to serve his role as Contracts Manager for the Lee Combined Cycle Project through June of 2018. Plaintiff pleaded with his Functional Manager at the time, Tracy Baker, during Plaintiff's 2018 annual performance review that he had grown tired of the personal derogatory remarks by personnel, and the lack of promotion despite what Mr. Baker called at the time an on-going effort. Plaintiff threatened legal action if his concerns where not addressed. Within two months of that conversation, Plaintiff was promoted to Lead Contracts Manager, Plaintiff's first promotion in nearly 8 years sometime around June, 2018. The raise however did not compensate for years of being denied promotional raises.

21. Plaintiff would apply and accept a job offer to be a Senior Manager of Contracts for

McDermott International in October of 2018. Plaintiff's last date of employment with Duke Energy was October 26, 2018. When negotiating his pay with the new employer, McDermott made it clear that Plaintiff's compensation was low for the position and years of experience, making it difficult to negotiate a fair starting salary. The willful lack of promotion for such an extended period not only limited Plaintiff's earnings while employed at Duke Energy, but stifled future earnings with other potential employers.

## VI.    CAUSES OF ACTION

### RACE DISCRIMINATION AND RETALIATION 42 U.S.C. 1981

22. Plaintiff hereby incorporates and realleges each and every paragraph of the facts.

23. Defendant has discriminated against Plaintiff in the terms and conditions of Plaintiffs employment because of Plaintiff's race and color (African American & Black). Plaintiff was subjected to discriminatory treatment that resulted in her unlawful termination on the basis of his race, in violation of 42 U.S.C. 1981.

24. Defendant has retaliated against Plaintiff which resulted in her unlawful termination on the basis of her race and color in violation of 42 U.S.C. 1981.

25. As a result of Defendant's conduct, Plaintiff has suffered and continues to suffer harm, including but not limited to: lost employment opportunities, lost wages, lost back pay and front pay, lost benefits, and attorneys' fees and costs. Plaintiff is entitled to recover such monetary and other damages, punitive damages, interest, and attorneys' fees and costs from Defendant under 42 U.S.C. 1981.

26. As a further result of Defendant's unlawful conduct, Plaintiff has suffered and continues to suffer impairment to his name and reputation, humiliation, embarrassment, emotional distress, and mental anguish. Plaintiff is entitled to recover damages for such injuries form

the Defendant under 42 U.S.C. 1981.

## VII. DAMAGES/ATTORNEY'S FEES

27. As a direct and proximate result of the aforementioned acts, Plaintiff has suffered loss of wages, both in the past, present, and future, as well as compensatory damages, including but not limited to emotional distress.

28. Defendant's action and conduct as described herein and the resulting damage and loss to Plaintiff has necessitated Plaintiff retaining the services of KENNARD LAW, PC, 5120 Woodway Dr., Suite 10010, Houston, Texas 77056 in initiating this proceeding. Plaintiff seeks recovery of reasonable and necessary attorney's fees. An award of reasonable and necessary attorney's fees to Plaintiff would be equitable and just and therefore authorized by Section 37.009 of the Civil Practice and Remedies Code.

## VIII. JURY DEMAND

29. Plaintiff demands a jury on all issues to be tried in this matter. Plaintiff submits the jury demand and herein submits the jury fee.

## IX. PRAYER

30. WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that Defendant be cited to appear and answer herein, and that on final trial, Plaintiff have judgment against Defendant for:

   a. All damages to which Plaintiff may be entitled pursuant to this;
   b. Judgment against Defendant, for actual damages sustained by Plaintiff as alleged herein;
   c. Judgment against Defendant, for back pay lost by Plaintiff as alleged herein;

    d. Judgment against Defendant, for front pay by Plaintiff as alleged herein;

    e. Grant Plaintiff general damages for the damage to Plaintiff's reputation;

    f. Compensatory damages, including, but not limited to, emotional distress;

    g. Past, present, and future physical pain and mental suffering;

    h. Punitive damages;

    i. Reasonable attorneys' fees, as allowed by law (with conditional awards in the event of appeal);

    j. Pre-judgment interest at the highest rate permitted by law;

    k. Post-judgment interest from the judgment until paid at the highest rate permitted by law;

    l. Costs of Court; and

    m. Such other and further relief, at law or in equity, to which Plaintiff may be entitled, whether by this Original Complaint or by any proper amendments thereto.

Respectfully submitted,



_____
Alfonso Kennard, Jr.
Texas Bar No. 24036888
S.D. ID 713316
Eddie Hodges Jr.
Texas Bar No. 24116523
S.D. ID. 3479748
Kennard Law, PC
5120 Woodway Drive, Suite 10010
Houston, Texas 77056
Tel.: (713) 742-0900
Fax: (832) 558-9412
Alfonso.Kennard@KennardLaw.com
**ATTORNEYS FOR PLAINTIFF**